# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### October 17, 2013 Session

## FREDA BOYCE and MARVELL BOYCE v. LPP MORTGAGE LTD.

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-11-0985-3     Kenny W. Armstrong, Chancellor**

---

**No. W2012-02725-COA-R3-CV - Filed November 20, 2013**

---

This case involves the application of the doctrine of *res judicata*. The parties previously engaged in litigation in the General Sessions Court regarding possession of a foreclosed property. The homeowners attempted to assert that the mortgage company did not have proper title to the property prior to initiating foreclosure proceedings. The parties and the trial court all apparently concluded that the General Sessions Court lacked jurisdiction to inquire into the merits of the title based on Tennessee Code Annotated Section 29-18-119. Accordingly, the General Sessions Court entered judgment in favor of the mortgage company. The homeowners subsequently filed an action in the Chancery Court, alleging that the mortgage company committed fraud in foreclosing the property because it had not acquired proper title to the property. The Appellee, having hired a new attorney, asserted that the issue should have been alleged as a defense to the General Sessions Court action, and was, therefore, barred by the doctrine of *res judicata*. The Chancery Court agreed and dismissed the homeowners' action on the basis of *res judicata*. We affirm and remand.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Archie Sanders, III, Memphis, Tennessee, for the appellants, Freda Boyce and Marvell Boyce.

Cannon F. Allen and J. Bennett Fox, Jr., Memphis, Tennessee, for the appellee, LPP Mortgage LTD.

**OPINION**

# I. Background

Because this case was decided on summary judgment, the facts are taken from the parties' statements of undisputed fact filed in the trial court. On December 6, 2006, the Plaintiffs/Appellants Freda Boyce and Marvell Boyce (together, "Appellants") signed a note for $200,000.00 to purchase real property at 1715 Belledeer Drive. Appellants obtained the loan to finance the purchase from New Century Mortgage. On December 5, 2008, Defendant/Appellee LPP Mortgage LTD ("Appellee") allegedly acquired the $200,000.00 note and the deed of trust on the property. According to its brief, Appellee also received an assignment of the note pursuant to a Master Mortgage Sale Agreement on March 31, 2008.

The Appellants paid their monthly mortgage payment for several years, but fell behind on their payments around April of 2010. The Appellants defaulted on the note in May of 2010. Consequently, the Appellee initiated foreclosure proceedings in November 2010. A foreclosure sale occurred on February 14, 2011. However, the Appellants refused to vacate the property.

On March 21, 2011, the Appellee initiated a Forcible Entry and Detainer ("FED") action in the Shelby County General Sessions Court against the Appellants for possession of the property. The Appellants appeared and argued that the foreclosure was void because the Appellee did not have good title to the property. Specifically, the Appellants asserted a claim of fraud and that "the property had not been properly transferred" to the Appellee. However, the Appellee took the position that Tennessee law did not allow the General Sessions Court to inquire into the merits of the Appellee's interest in the title based on Tennessee Code Annotated Section 29-18-119(c), discussed in detail *infra*. The trial court apparently agreed with the Appellee's interpretation of the statute and, thus, considered only whether the proper foreclosure procedures were followed. No facts supporting the fraud claims were adduced in the General Sessions Court and the General Sessions Court judge made no findings as to these allegations. Appellee was ultimately awarded possession of the property. The date for execution of the judgment was extended beyond the statutory ten-day period by agreement of the parties to allow an action in Chancery Court to be filed. The Chancery Court action was apparently meant to adjudicate the issue regarding the merits of Appellee's title. Thus, no appeal was taken from the General Sessions Court order awarding possession of the property to the Appellee and it became final.

Thereafter, on June 9, 2011, Appellants filed a complaint for Declaratory Judgment and to Set Aside Foreclosure, for Ex Parte Temporary Restraining Order and Injunctive Relief and for Damages and Other Legal and Equitable Relief in the Shelby County Chancery Court. The complaint alleged that Appellee did not legally acquire the deed of trust and indebtedness with regard to the Appellants' property. On September 1, 2011, Appellee filed

a Motion to Dismiss the complaint, which was denied by order of October 27, 2011.

Thereafter, on August 23, 2012, the Appellee, having retained different counsel, filed a motion for summary judgment and statement of undisputed facts, arguing that the claim was barred by *res judicata*, based on the case of ***Davis v. Williams***, No. E2010-01139-COA-R3-CV, 2011 WL 335069, (Tenn. Ct. App. Jan. 31, 2011), discussed in detail *infra*. The Appellants filed a response to the Appellee's motion, as well as their own statement of undisputed facts, which the Appellee did not contest.[1] In their response to the motion, the Appellants disputed that the allegations of fraud and improper transfer currently before the trial court had been decided on the merits in the original FED action in General Sessions Court, and asserted that disputes of fact precluded summary judgment. The trial court entered an order granting summary judgment in favor of the Appellee on October 22, 2012. Specifically, the trial court found that:

> 4. Under Tennessee law, the [Appellants] had the right to raise the defense of wrongful foreclosure in the previously decided General Sessions action on May 11, 2011. [Appellants] contend that 1) they raised the issue of "good title" in the General Sessions action, and 2) the Court determined that it could not legally consider those arguments and did not make a ruling concerning those issues. No transcript of the proceedings in General Sessions exists.
>
> 5. The basis of the [Appellants'] claim in this Chancery Court action is that [Appellee] did not have good title to foreclose on the subject property. The [Appellants] admitted that they were in default on the note and the mortgage held by [Appellee]. The [Appellants] did not request additional time to pursue discovery prior to this Court's ruling on the summary judgment motion.
>
> 6. Having tried the General Sessions action and lost and failing to pursue on an appeal of the General Sessions ruling, [Appellants] have forfeited their opportunity to assert this claim in this Court since the General Sessions decision is final and the detainer action and the present action arose out of the same transaction.

---

[1] It is well-settled that, when a party fails to respond to the other party's statement of undisputed facts, the court may consider the facts admitted. ***Holland v. City of Memphis***, 125 S.W.3d 425, 428–29 (Tenn. Ct. App. 2003) ("Thus the material facts set forth in the statement of [a] party may be deemed admitted in the absence of a statement controverting them by the opposing party.").

7.      The doctrine of *res judicata* applies and precludes a second suit between these same parties . . . with respect to all issues that were or could have been litigated in the earlier action in General Sessions Court.

\*      \*      \*

11.     Because there is no genuine issue as to any material fact relating to the finality of the General Sessions judgment and the fact that the claims pressed in this Court [] arise from and are related to the claims in the General Sessions proceeding, all [Appellants'] claims against [the Appellee] should be dismissed with prejudice.

The Appellants filed a timely notice of appeal.

## II. Issues Presented

The Appellants raise one issue, which is taken from their brief:

1.      Whether the trial court erred in granting the Appellee's Motion for Summary Judgment on the ground that the Appellants' claim was barred by the doctrine of *res judicata*?

## III. Standard of Review

A trial court's decision to grant a motion for summary judgment presents a question of law. Our review is therefore *de novo* with no presumption of correctness afforded to the trial court's determination. **Bain v. Wells,** 936 S.W.2d 618, 622 (Tenn. 1997). This Court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. **Abshure v. Methodist Healthcare–Memphis Hosps.**, 325 S.W.3d 98, 103 (Tenn. 2010).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. **Hannan v. Alltel Publ'g Co**., 270 S.W.3d 1, 8-9 (Tenn. 2008). However,

"[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shutup' or even to cast doubt on a party's ability to prove an element at trial." *Id*. at 8. If the moving party's motion is properly supported, "The burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Id.* at 5(citing **Byrd v. Hall**, 847 S.W.2d 208, 215 (Tenn. 1993)). The non-moving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06." **Martin v. Norfolk Southern Railway. Co.**, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted).

When reviewing the evidence, we must determine whether factual disputes exist. In evaluating the trial court's decision, we review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. **Stovall v. Clarke**, 113 S.W.3d 715, 721 (Tenn. 2003). If we find a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." **Mathews Partners**, 2009 WL 3172134 at *3 (citing **Byrd**, 847 S.W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." **Byrd**, 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." **Id.** "Summary Judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." **Landry v. South Cumberland Amoco, et al**, No. E2009-01354-COA-R3-CV, (Tenn. Ct. App. March 10, 2010) (citing **Carvell v. Bottoms,** 900 S.W.2d 23 (Tenn. 1995)). "When considering the evidence, the reviewing court must consider the evidence in a light most favorable to the non-moving party and must resolve all reasonable inferences in the nonmoving party's favor." **King v. Betts**, 354 S.W.3d 691, 712 (Tenn. 2011) (citing **B & B Enters. of Wilson Cnty., LLC v. City of Lebanon**, 318 S.W.3d 839, 845 (Tenn. 2010).

### IV. *Res Judicata*

The issues in this case concern the application of the doctrine of *res judicata*. As recently explained by our Supreme Court:

> The doctrine of *res judicata* or claim preclusion bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, or could have been, litigated in the former suit. **Creech v. Addington**, 281 S.W.3d

363, 376 (Tenn. 2009); ***Richardson v. Tennessee Bd. of Dentistry***, 913 S.W.2d 446, 459 (Tenn. 1995) (quoting ***Goeke v. Woods,*** 777 S.W.2d 347, 349 (Tenn. 1989)). It is a "rule of rest," ***Moulton v. Ford Motor Co.***, 533 S.W.2d 295, 296 (Tenn. 1976), and it promotes finality in litigation, prevents inconsistent or contradictory judgments, conserves judicial resources, and protects litigants from the cost and vexation of multiple lawsuits. ***In re Estate of Boote***, 198 S.W.3d 699, 718 (Tenn. Ct. App. 2005); ***Sweatt v. Tennessee Dep't of Corr.***, 88 S.W.3d 567, 570 (Tenn. Ct. App. 2002).

      The party asserting a defense predicated on *res judicata* or claim preclusion must demonstrate (1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits. ***Lien v. Couch***, 993 S.W.2d 53, 56 (Tenn. Ct. App. 1998); *see also* ***Lee v. Hall***, 790 S.W.2d 293, 294 (Tenn. Ct. App .1990). A trial court's decision that a claim is barred by the doctrine of *res judicata* or claim preclusion involves a question of law which will be reviewed de novo on appeal without a presumption of correctness. ***In re Estate of Boote***, 198 S.W.3d at 719.

***Jackson v. Smith***, 387 S.W.3d 486, 491 (Tenn. 2012). *Res judicata* applies in FED actions:

      The doctrine of claim preclusion applies to actions of forcible entry and detainer. A judgment in an action of forcible entry and detainer is conclusive and bars further litigation between the parties as to matters which could and should have been adjudicated, as well as to matters put in issue and determined, and, generally such judgment may be pleaded in bar to another action of forcible entry and detainer.

      A judgment in an action of forcible entry and detainer does not bar a subsequent action under the doctrine of claim preclusion where each is a separate and distinct cause of action, or where the matters in the second action could not have been litigated in the forcible entry and detainer action, such as claims for damages.

50 C.J.S. Judgments § 1193 (footnotes omitted).

Thus, the underlying tenet of *res judicata* is to bar a litigant from raising an issue that was or could have been litigated in a previous action. Appellants first argue that the Chancery Court erred in concluding that the Appellants' claim of fraud regarding the title could have been litigated in the General Sessions action, citing Tennessee Code Annotated Section 29-18-119. If the issue of the merits of the title could not have been litigated in the General Sessions Court, then *res judicata* does not operate to bar the Appellants from raising the issue in a subsequent action in Chancery Court. Section 29-18- 119 provides that in an FED action:

> (b) The general sessions judge will try every case upon its merits and ascertain whether the plaintiff or defendant is entitled to the possession of the premises agreeably to the laws governing such cases, and give judgment accordingly.
> (c) **The estate, or merits of the title, shall not be inquired into.**

(Emphasis added). Based on this statute, Appellants argue that the General Sessions judge was not authorized to determine whether the Appellee had proper title to the property at issue in order to initiate foreclosure proceedings.

This issue was recently examined by this Court in ***Davis v. Williams***, E2010-01139-COA-R3-CV, 2011 WL 335069 (Tenn. Ct. App. Jan. 31, 2011). In ***Davis***, this Court concluded that the General Sessions Court does have jurisdiction to consider the merits of the title, when the issue is raised as a defense to an FED action. The Court further concluded that the failure to raise such a defense in the FED action resulted in the homeowner being barred from raising the merits of title as an issue in a subsequent proceeding. In the case, the sellers of the property conceded that the General Sessions Court did not have "jurisdiction to entertain the question of title," presumably based on the above cited statute. According to the Court, however, the sellers maintained that "since wrongful or fraudulent foreclosure could have been raised as a defense in the unlawful detainer action, but was not, it cannot now be the basis of a new action." The Court agreed with the Sellers, explaining:

> The courts of this state have consistently applied the doctrine of *res judicata* "to protect individuals from the burden of litigating multiple lawsuits, to promote judicial economy, and to promote the policy favoring reliance on final judgments by minimizing the possibility of inconsistent decisions." ***Gerber v. Holcomb***, 219 S.W.3d 914, 918 (Tenn. Ct. App. 2006).

It is a fundamental principle of jurisprudence that material facts or questions, which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions becomes *res judicata* and may not again be litigated in a subsequent action between the same parties or their privies, regardless of the form the issue may take in the subsequent action whether the subsequent action involves the same or a different form or proceedings, or whether the second action is upon the same or a different cause of action, subject matter, claim, or demand, as the earlier action. In such cases, it is also immaterial that the two actions are based on different grounds, or tried on different theories, or instituted for different purposes, and seek different relief . . . .

*Id.* at 919 (quoting ***Cotton v. Underwood***, 223 Tenn. 122, 442 S.W.2d 632, 635 (1969)).

\* \* \*

There is absolutely no doubt that wrongful foreclosure can be raised as an affirmative defense to an unlawful detainer action brought by the purchaser of property in foreclosure. ***Beasley***, [No. W2006-00386-COA-R3-CV,] 2007 WL 77289 at \*6–7 [(Tenn. Ct. App. Jan. 11, 2007)]; ***Federal Nat'l Mortgage Ass'n v. Robilio***, No. W2007-01758-COA-R3-CV, 2008 WL 2502114 at \*5 (Tenn. Ct. App. June 24, 2008). "Where title bears directly upon the right of possession . . . a party may legitimately interpose the issue." ***Beasley***, 2007 WL 77289 at \*6. It is the purchaser's "constructive entry" onto the premises through the title obtained in foreclosure that "provides the basis for maintaining the unlawful detainer action." *Id.* at \*7.

When the holding in ***Gerber*** is examined with reference to the holding in ***Beasley***, it is inescapable that even though fraud in the foreclosure was not raised as a defense in the unlawful detainer action, it was conclusively determined not to exist. "In

-8-

failing to raise these matters [concerning fraud in the foreclosure] which could have been litigated and decided as an incident to or essentially connected with the subject matter of the prior litigation, [the Buyers] forfeited [their] opportunity to assert [fraud] under the doctrine of *res judicata*." **Gerber**, 219 S.W.3d at 918.

*Davis*, 2011 WL 335069, at *2–*4.

From our reading, then, while the merits of title cannot be considered as a basis for affirmative relief in the General Sessions Court, an argument as to the merits of title is an appropriate defense to an FED action in General Sessions Court, despite the language of Tennessee Code Annotated Section 29-18-119(c). Indeed, as explained in a case relied upon in the **Davis** Opinion:

> FED actions concern only the right to possession. **Newport Hous. Auth.**, 839 S.W.2d at 89. In these summary proceedings, "the estate, or merits of the title, shall not be inquired into." Tenn. Code Ann. § 29-18-119(c) (2000). At first glance, it would seem that wrongful foreclosure, being tantamount to an assertion of title, could not constitute a defense in this action. Where title bears directly upon the right of possession, however, a party may legitimately interpose the issue. **Allison v. Casey**, 63 Tenn. 587 (Tenn.1874) (allowing evidence of title as proof of right to control and rent out property); **Phillips v. Sampson**, 39 Tenn. 429 (Tenn.1859); **Settle v. Settle**, 29 Tenn. 504 (Tenn.1850). For example, a court may inquire into title when a claimant has fraudulently represented his title to another and induced him to lease the property. **Phillips**, 39 Tenn. at 429.
>
> Additionally, FED actions cannot be resolved in favor of a claimant when title, if bearing directly on his immediate right to possession, is questionable. *See* **Elliott v. Lawless**, 53 Tenn. 123 (Tenn.1871); 35A Am.Jur.2d *Forcible Entry & Detainer* § 50 (2006) ("[I]f the issue of title is germane to the issue of who has the present right of possession, questions of title may be raised . . . . However, such an issue may result in the case being removed from the summary proceedings contemplated by a forcible entry and detainer action, or the claimant may be required to establish his or her superior title prior to bringing the summary proceeding." (footnotes omitted)).

***Beasley***, 2007 WL 77289, at 6. Thus, the ***Beasley*** Court concluded that questions of title could be raised as defenses to FED actions in General Sessions Court.

The ***Davis*** and ***Beasley*** holdings were recently reexamined and upheld in ***Foster v. Federal Nat. Mortg. Ass'n***, No. E2012-02346-COA-R3CV2013, 2013 WL 3961193 (Tenn. Ct. App. July 31, 2013). The Court in ***Foster*** likewise held that the General Sessions Court has jurisdiction to entertain the question of title as a defense to a FED action. ***Id.*** at *3–*4. Thus, the ***Foster*** court, like the Court in ***Davis***, concluded that *res judicata* could apply based on the homeowner's failure to litigate that issue in the original suit. ***Id.***

The decisions in ***Beasley***, ***Davis***, and ***Foster*** are authoritative and binding on this Court. As explained by the Tennessee Supreme Court:

> The sound principle of stare decisis requires us to uphold our prior precedents to promote consistency in the law and to promote confidence in this Court's decisions. ***Carroll v. Whitney***, 29 S.W.3d 14, 25 (Tenn. 2000) (Anderson, C.J., dissenting). This Court will overturn a settled rule of law only when there is an error in the precedent, when the precedent is obsolete, when adhering to the precedent would cause greater harm to the community than disregarding stare decisis, or when the prior precedent conflicts with a constitutional provision. ***In re Estate of McFarland***, 167 S.W.3d 299, 306 (Tenn. 2005).
>
> &ast;   &ast;   &ast;
>
> In addition, we have long adhered to the rule that when a prior decision has addressed the construction and operation of a statute, the principle of stare decisis will apply unless the General Assembly acts to change the statute. ***LaManna v. Univ. of Tenn.***, 225 Tenn. 25, 462 S.W.2d 877, 881 (1971).

***Cooper v. Logistics Insight Corp.***, 395 S.W.3d 632, 639 (Tenn. 2013). Although the decision in ***Davis*** was only two years ago, the decision in ***Beasley*** allowing a party to "interpose the issue" of the merits of the title in the General Sessions Court was decided approximately six years ago. In that time, however, the General Assembly has taken no action to alter the Court's decision. Further, the Appellants have cited no law that leads this Court to conclude that the holdings in these cases are incorrect, obsolete, would cause harm to the community, or that the conclusion conflicts with a constitutional provision. *See **id.*** Based on the foregoing authority, we conclude that the General Sessions Court had jurisdiction to consider the merits

of the title held by the Appellee as a defense to the FED action. Accordingly, *res judicata* may apply to bar litigation of this issue in a subsequent action.

Appellants next argue that, even if the issue of the merits of the title could have been litigated in the General Sessions Court, the Chancery Court erred in granting summary judgment to the Appellee when there is a dispute as to whether the issue was decided "on the merits." As previously discussed, one of the essential elements required to apply *res judicata* is that "that the underlying judgment was final and on the merits." **Jackson**, 387 S.W.3d at 491 (citing **Lien**, 993 S.W.2d at 56). Because this case was determined on a motion for summary judgment, Appellee, as the moving party, had the burden to show that there were no material facts in dispute and that it was entitled to judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04. Specifically with regard to *res judicata*:

> In order to succeed on a plea of *res judicata*, or estoppel by judgment, the party raising the defense must plead it, Tenn. R. Civ. P. 8.03, and must carry the burden of proving it. **Carter County v. Street**, 36 Tenn. App. 166, 252 S.W.2d 803 (1952). To carry that burden, the party raising the defense must generally put in evidence the record or a copy of the record of the former case. **American National Bank v. Bradford**, 28 Tenn. App. 239, 188 S.W.2d 971 (1945). If the record does not conclusively show that a particular matter was determined in the former proceeding, the party relying on *res judicata* as a defense must supplement the record by other proof. **Carter County v. Street**, 36 Tenn. App. 166, 252 S.W.2d 803 (1952). "Parol evidence is always admissible to show the fact, even if it appears prima facie that a question has been adjudicated, where the record does not show that it was actually settled." **Fowlkes v. State**, 82 Tenn. (14 Lea) 14, 19 (1884); *see also* **Borches & Co. v. Arbuckle Bros.**, 111 Tenn. 498, 78 S.W. 266 (1903).

**Gregory v. Gregory**, 803 S.W.2d 242, 243–44 (Tenn. Ct. App. 1990). In addition, "[i]f there is any uncertainty to the matter formerly adjudicated, the burden of showing it with sufficient certainty by the record or extrinsically is upon the party who claims the benefit of the former judgment." **Id.** at 244 (citing **Bagwell v. Bagwell**, 153 Fla. 471, 14 So.2d 841, 843 (1943)).

To support its *res judicata* defense, the Appellee submitted the detainer warrant that was granted by the trial court. The detainer warrant specifically grants Appellee possession of the subject property. This is exactly the type of judgment that was held to have preclusive effect in **Foster**. *See* **Foster**, 2013 WL 3961193, at *4. In addition, Appellee, in its statement

of undisputed facts, states that the FED action was "tried on the merits." In response to this statement, the Appellants contend only that the General Sessions Court did not consider the fraud allegations, but only determined whether proper foreclosure proceedings were followed. In addition, the Appellants admitted that the judgment of the General Sessions Court was final.

Essentially, the Appellants argue that Appellee has not conclusively shown that the issues of fraud regarding the title of the property were decided on their merits. To support this argument, Appellants cite to this Court's decision in *Lewis v. Muchmore*, 26 S.W.3d 632 (Tenn. Ct. App. 2000). In *Lewis*, this Court concluded that the trial court erred in finding that the Plaintiff's arguments were barred by *res judicata* when there was "no evidence in the record why the first general sessions court ruled as it did in the prior FED proceedings and whether or not it was decided on the merits or dismissed because of a procedural defect." *Id.* at 637. Specifically, in *Lewis*, the Plaintiffs had brought a prior FED action against the Defendants in General Sessions Court, which resulted in a verdict for the Defendants. *Id.* at 636. In addition, the record indicated that the prior General Sessions judgment may have been decided on a procedural defect, as the Plaintiff admitted that she had not provided proper notice to the Defendants. *Id.* at 637. In contrast, in this case, the prior FED action was not dismissed or denied, but it was granted and the Appellee was awarded possession of the property. Thus, the Appellees, unlike the Defendants in *Lewis*, have met their burden to show undisputed evidence that the original judgment awarding them possession was on the merits.

Appellants argue, however, that despite the award of possession being decided on the merits, there is no indication from the record that the fraud issue was decided on the merits. Appellants' argument, while novel, is not persuasive. As previously discussed, *res judicata* bars claims both that have been litigated and that could have been litigated in the previous suit. To require that the specific claim asserted in the subsequent suit had to have been decided on its merits would be to hold that the claim must have actually been asserted in the previous suit. Thus, for this Court to hold that *res judicata* cannot apply unless the specific claim at issue, rather than the judgment on the entire action, be decided on its merits, would contradict the basic tenets of *res judicata* jurisprudence. Instead, the prior suit need not adjudicate every issue that could have possibly been litigated on the merits, it need only "conclude the rights of the parties on the merits." *Goeke v. Woods*, 777 S.W.2d 347, 349 (Tenn. 1989). In this case, the Appellants asserted the issue of the merits of title as a defense to the detainer action. The trial court, after considering the issue, awarded possession to the Appellee. Indeed, even the Appellants admit in their statement of undisputed facts that the General Sessions Court considered and rejected their fraud allegations on the basis that the General Sessions Court was not the proper court to dispose of that matter. While that decision was erroneous, *see **Davis***, 2011 WL 335069, at \*2–\*4, it does not prevent this Court from concluding that the judgment awarding possession to Appellee was on the merits. *See*

***Federated Dept. Stores, Inc. v. Moitie***, 452 U.S. 394, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981) ("[T]he *res judicata* consequences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case.").

Based on the foregoing, we conclude that all of the required elements of *res judicata* have been met in this case. First, based on the decision in ***Davis***, the judgment in the General Sessions Court was "rendered by a court of competent jurisdiction." ***Jackson***, 387 S.W.3d at 491 (citing ***Lien***, 993 S.W.2d at 56). Second, the Appellants do not dispute that the "same parties . . . were involved in both suits" and that the issues in both cases involve the same cause of action. ***Id.*** Finally, we have concluded that the undisputed facts show that "the underlying judgment was final and on the merits." ***Id.*** Under these circumstances, unless some other law operated to bar application of *res judicata*, we conclude that the trial court did not err in concluding that Appellants' allegations regarding the merits of title were barred by the doctrine of *res judicata*.

## IV. Estoppel

Appellants next argue that Appellee was barred from asserting the defense of *res judicata* by application of the doctrine of judicial estoppel. Specifically, the Appellants assert that it is undisputed that the Appellee took the position in the General Sessions Court that the court did not have jurisdiction to inquire into the merits of the Appellee's title; in the Chancery Court, however, the Appellee argued that the General Sessions Court was the appropriate venue for such a claim. Thus, the Appellants argue that the Appellee should not be permitted to take a position in the Chancery Court that was inconsistent with its position in the General Sessions Court.

> Under the doctrine of judicial estoppel,
>> a party will not be permitted to occupy inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had or was chargeable with, full knowledge of the facts, and another will be prejudiced by this action.

***Regions Financial Corp. v. Marsh USA, Inc.***, 310 S.W.3d 382, 402 (Tenn. Ct. App. 2009) (citing ***Obion County v. McKinnis***, 211 Tenn. 183, 364 S.W.2d 356, 357 (1962)). The Tennessee Supreme Court has explained the doctrine of judicial estoppel this way:

> The distinctive feature of the Tennessee law of judicial estoppel (or estoppel by oath) is the expressed purpose of the

court, on broad grounds of public policy, to uphold the sanctity of an oath. The sworn statement is not merely evidence against the litigant, but (unless explained) precludes him from denying its truth. It is not merely an admission, but an absolute bar.

*Marcus v. Marcus*, 993 S.W.2d 596, 602 (Tenn.1999) (quoting *Sartain v. Dixie Coal & Iron Co.*, 150 Tenn. 633, 266 S.W. 313, 318 (1924)). While the doctrine of judicial estoppel is applied to prohibit a party from taking "a position that is directly contrary to or inconsistent with a position previously taken by the party," *Guzman v. Alvares*, 205 S.W.3d 375, 382 (Tenn. 2006), the doctrine generally only applies to "sworn statements made in the course of judicial proceedings." *Sartain*, 266 S.W. at 316; accord *Carvell v. Bottoms*, 900 S.W.2d 23, 30 (Tenn.1995) (noting that "parties are 'judicially estopped' from taking contrary sworn positions on the same issue in different lawsuits").

The Tennessee Supreme Court recently clarified the doctrine of judicial estoppel in *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303 (Tenn. 2009). Specifically, the *Cracker Barrel* Court limited application of judicial estoppel to instances where a party takes a position inconsistent with a previous sworn statement, rather than mere legal positions, overruling a previous Court of Appeals decision. *Id.* at 314–15. The Tennessee Supreme Court explained:

> While our appellate courts most often have applied the doctrine of judicial estoppel only to prevent a party from attempting to contradict by oath a statement of fact previously made under oath, [] *Werne v. Sanderson*, 954 S.W.2d 742, 745 (Tenn. Ct. App. 1997) (noting that "in order for the judicial estoppel to apply, the party against whom the estoppel is urged must have made a statement of fact under oath that he or she later seeks to contradict"), both this Court and the Court of Appeals have sometimes applied the doctrine where no oath was involved. *E.g., Nashville Trust Co. v. Lebeck*, 197 Tenn. 164, 270 S.W.2d 470, 479 (1954) (noting that "'[w]hile the law of judicial estoppel is ordinarily applied to one who has made oath to a state of facts in a former judicial proceeding which in a later proceeding he undertakes to contradict, yet it is frequently applied, where no oath is involved, to one who undertakes to maintain inconsistent positions in a judicial proceeding'") (quoting *Stearns Coal & Lumber Co. v. Jamestown R. Co.*, 141 Tenn. 203, 208 S.W. 334, 334 (1919)). This inconsistent application of the doctrine of judicial estoppel is illustrated, for example, by the Court of

Appeals' most recent discussion of the issue:

> There are two distinct branches of judicial estoppel: estoppel by oath and estoppel by inconsistent position. The first branch is designed to "uphold the sanctity of an oath." "The sworn statement is not merely evidence against the litigant, but (unless explained) precludes him from denying its truth." The second branch[, in which no oath is required,] is "founded on the administration of justice and seek[s] to prevent litigants from unfairly benefitting from a strategic shift in legal position." Both branches of judicial estoppel aim to prevent parties from "play[ing] fast-and-loose with the courts."

*Johnson v. Lenoir City Housing Auth.*, No. E2006-02774-COA-R3-CV, 2008 WL 836364, at *7 (Tenn. Ct. App. Mar. 31, 2008) (no app. for perm. app. filed) (citations omitted). Although this Court agrees that a party may be estopped from contradicting a sworn statement previously made or from gaining an unfair advantage by taking inconsistent positions in a legal proceeding, we do not agree with the Court of Appeals' conclusion that the doctrine of judicial estoppel should be applied in both instances. Instead, we take this opportunity to clarify that the doctrine of judicial estoppel is applicable only when a party has attempted to contradict by oath a sworn statement previously made. *See Allen v. Neal*, 217 Tenn. 181, 396 S.W.2d 344, 346 (1965) (noting that "[j]udicial estoppels arise from sworn statements made in the course of judicial proceedings, generally in a former litigation, and are based on public policy upholding the sanctity of an oath and not on prejudice to adverse party by reason thereof, as in the case of equitable estoppel"). In those instances where no oath is involved but the party is attempting to gain an unfair advantage by maintaining inconsistent legal positions, the doctrine of equitable estoppel should be applied.

*Cracker Barrel*, 284 S.W.3d at 314–15.

In this case it is undisputed that the position at issue is a legal position, rather than a

sworn statement. Accordingly, the doctrine of judicial estoppel is not applicable to prevent Appellee from raising its *res judicata* defense in the Chancery Court.

The Appellants also argue that Appellee should be barred from asserting the defense of *res judicata* through application of the doctrine of equitable estoppel. We note, however, that from our review of the record in this case, it appears that the Appellants failed to raise the issue of equitable estoppel to the Chancery Court. Generally, when a party fails to raise an issue in the trial court, it will be deemed waived on appeal. *See **Powell v. Cmty. Health Sys., Inc.**,* 312 S.W.3d 496, 511 (Tenn. 2010). However, even assuming *arguendo* that this issue was properly raised, we conclude that equitable estoppel is not applicable in this case.

This Court recently discussed the doctrine of equitable estoppel, stating:

> To successfully invoke the doctrine of equitable estoppel, a plaintiff must establish the following elements with respect to the party against whom the plaintiff asserts the doctrine:
>
> > (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts.
>
> ***Osborne v. Mountain Life Ins. Co.**,* 130 S.W.3d 769, 774 (Tenn. 2004).

***Equity Mortg. Funding, Inc. of Tennessee v. Haynes**,* No. M2011-01717-COA-R3CV, 2012 WL 982958 (Tenn. Ct. App. 2012) (perm. app. denied Aug. 15, 2012). Accordingly, in order to apply equitable estoppel, the opposing party must have either concealed material facts or made a false representation of material "facts, either past or present." ***Consumer Credit Union v. Hite**,* 801 S.W.2d 822, 825 (Tenn. Ct. App. 1990). Legal arguments, however, are not facts. *Black's Law Dictionary* describes the distinction between facts and arguments regarding the law, stating:

> "Fact" is very frequently used in opposition to "law." . . . A "fact", as distinguished from the "law", may be taken as that out

of which the point of law arises, that which is asserted to be or not to be, and is to be presumed or proved to be for the purpose of applying or refusing to apply a rule of law. . . . Law is a principle; fact is an event. Law is conceived; fact is that which has been according to or in contravention of the rule.

*Black's Law Dictionary* 532 (5th ed. 1979). Indeed, the situation presented by this case is similar to the situation wherein a party makes a material factual misrepresentation in order to induce another party to make a contract. In that situation, *Williston on Contracts* notes that misstatements as to the law do not qualify as material factual misrepresentations:

> It is well settled that a claim of fraud in the making of a contract cannot generally be supported by proof of misstatements as to matters of law. On this principle, a conscious misstatement of the meaning of certain terms in a written contract has been held immaterial.
>
> The rule, which is in essence an application of the broader principle that fraud must rest on a misrepresentation of a matter of fact, and cannot be supported by a misstatement of a matter of opinion, is based on the principle that everyone is equally capable of determining the law, is presumed to know the law and is bound to take notice of the law and, therefore, in legal contemplation, cannot be deceived by representations concerning the law or permitted to say he or she has been misled.

26 *Williston on Contracts* § 69:10 (4th ed.) (noting certain exceptions not applicable in this case). Further, equitable estoppel requires "at a minimum" that the party raising the defense lacked the "opportunity to know the truth." ***Werne v. Sanderson***, 954 S.W.2d 742, 746 (Tenn. Ct. App.1997) (citing ***Campbell v. Precision Rubber Products Corp.***, 737 S.W.2d 283, 286 (Tenn. Ct. App. 1987)). In this case, it is undisputed that both the ***Davis*** and the ***Beasley*** Opinions were rendered prior to the hearing in the General Sessions Court. Accordingly, Appellants, through diligent research, had every opportunity to know of these decisions. Under these circumstances, we decline to conclude that the doctrine of equitable estoppel is applicable in this case.

## V. Conclusion

The judgment of the Chancery Court of Shelby County is affirmed and this matter is remanded to the trial court for further proceedings as may be necessary and are in accordance with this Opinion. Costs of this appeal are taxed to Appellants Freda Boyce and Marvell

Boyce, and their surety.

_____
J. STEVEN STAFFORD, JUDGE